# EXHIBIT 3

*Kane County (6) v. United States*,
4:25-cv-90-DN-PK

**SUWA's Proposed Motion
to Dismiss**

Stephen H.M. Bloch (#7813)
Hanna Larsen (#18458)
SOUTHERN UTAH WILDERNESS
ALLIANCE
425 East 100 South
Salt Lake City, UT 84111
Telephone: (801) 486-3161
steve@suwa.org
hanna@suwa.org

*Attorneys for Proposed Defendant-Intervenor*
*Southern Utah Wilderness Alliance*

Mitch M. Longson (#15661)
MANNING CURTIS BRADSHAW
& BEDNAR PLLC
201 South Main Street, Suite 750
Salt Lake City, UT 84111
Telephone: (801) 363-5678
mlongson@mc2b.com

Trevor J. Lee (#16703)
HOGGAN LEE HUTCHINSON
257 E 200 S, #1050
Salt Lake City, UT 84111
Telephone: (435) 615-2264
trevor@hlh.law

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION, SOUTHERN REGION

| | |
|---|---|
| **KANE COUNTY (6)**, a Utah political subdivision, and the **STATE OF UTAH**,<br><br>    Plaintiffs,<br><br>v.<br><br>**UNITED STATES OF AMERICA**,<br><br>    Defendant,<br><br>and<br><br>**SOUTHERN UTAH WILDERNESS ALLIANCE**,<br><br>Proposed Defendant-Intervenor. | Case No. 4:25-cv-00090-DN-PK<br><br>**[PROPOSED] MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**<br><br>Judge David Nuffer<br>Magistrate Judge Paul Kohler |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION .................................................................................................... 1

STATEMENT OF FACTS ........................................................................................ 1

   I.  Overview of R.S. 2477 ................................................................................... 1

   II. Prior Litigation Over the Hancock Road ...................................................... 3

   III.Plaintiffs' Attempt to Revisit *Kane (1)*'s Holding ........................................ 4

       A.  Subsequent events ............................................................................... 4

       B.  The *Holders* Decision ........................................................................ 5

STANDARD OF REVIEW ...................................................................................... 7

ARGUMENT ........................................................................................................... 7

   I.  The Court Does Not Have Subject Matter Jurisdiction Because There is No Dispute of Title Over the Hancock Road. ................................................ 8

       A.  The Tenth Circuit previously determined there was no title dispute over the Hancock Road. ..................................................................... 9

       B.  Subsequent events have not created a title dispute. ............................ 10

   II. The Court Cannot Approve Any Disclaimer of Title Without Subject Matter Jurisdiction. ..................................................................................... 14

CONCLUSION ...................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*Block v. N.D. ex rel. Bd. of Univ. & Sch. Lands,*
  461 U.S. 273 (1983) ........................................................................................... 8

*Grupo Dataflux v. Atlas Global Group L.P.,*
  541 U.S. 567 (2004) ........................................................................................... 8

*High Lonesome Ranch, LLC v. Bd. of Cnty. Comm'rs for the Cnty. of Garfield,*
  61 F.4th 1225 (10th Cir. 2023) ...................................................................... 8, 9

*Kane Cnty. v. United States,*
  2013 U.S. Dist. LEXIS 40118 (D. Utah March 20, 2013) ................................. 3

*Kane Cnty. v. United States,*
  2024 U.S. Dist. LEXIS 142312 (D. Utah Aug. 9, 2024) ........................... passim

*Kane Cnty. v. United States,*
  772 F.3d 1205 (10th Cir. 2014) ............................................................... passim

*Kane Cnty. v. United States,*
  934 F. Supp. 2d 1344 (D. Utah 2013) ............................................................... 3

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
  511 U.S. 375 (1994) ........................................................................................... 7

*Leisnoi, Inc. v. United States,*
  170 F.3d 1188 (9th Cir. 1999) ..................................................................... 8, 15

*McPhail v. Deere & Co.,*
  529 F.3d 947 (10th Cir. 2008) .......................................................................... 9

*Meridian Security Ins. Co. v. Sadowski,*
  441 F.3d 536 (7th Cir. 2006) ............................................................................ 9

*S. Utah Wilderness All. v. Bureau of Land Mgmt.,*
  425 F.3d 735 (10th Cir. 2005) ........................................................... 2, 3, 11, 12

*San Juan Cnty. v. United States,*
  754 F.3d 787 (10th Cir. 2014) ........................................................................ 11

*Sawtooth Mt. Ranch LLC v. United States*,
   2020 U.S. Dist. LEXIS 7071 (D. Idaho 2020) .................................................... 15

*Southway v. Cent. Bank of Nigeria*,
   328 F.3d 1267 (10th Cir. 2003) ............................................................................ 7

*St. Louis Baptist Temple v. Fed. Deposit Ins. Corp.*,
   605 F.2d 1169 (10th Cir. 1979) .......................................................................... 13

*Thompson v. Weyerhaeuser Co.*,
   582 F.3d 1125 (10th Cir. 2009) ............................................................................ 9

*United States v. Ahidley*,
   486 F.3d 1184 (10th Cir. 2007) .......................................................................... 13

*Wilderness Soc'y v. Kane Cnty.*,
   581 F.3d 1198 (10th Cir. 2009) ............................................................................ 2

**Statutes**

28 U.S.C. § 2409a(a) ........................................................................................... 2, 8

28 U.S.C. § 2409a(e) ............................................................................................. 14

Pub. L. No. 94-579 § 701(a), 90 Stat. 2743 (1976) .............................................. 2

**Rules**

Fed. R. Civ. P. 12(b)(1) ...................................................................................... 1, 7

Fed. R. Evid. 201(b)(2) ........................................................................................ 13

Pursuant to Federal Rule of Civil Procedure 12(b)(1), the Southern Utah Wilderness Alliance ("SUWA") respectfully moves this Court to dismiss Plaintiffs' Kane County, Utah and the State of Utah's (collectively, "Kane County" or "Plaintiffs") claims in the above-captioned matter for lack of subject matter jurisdiction.

## INTRODUCTION

Pursuant to the Quiet Title Act ("QTA"), 28 U.S.C. § 2409a, Kane County seeks to quiet title to a claimed Revised Statute 2477 ("R.S. 2477") right-of-way for the K1100 Hancock Road, which traverses federal public land managed by the United States Bureau of Land Management ("BLM").[1] The Tenth Circuit, however, has already concluded there is no dispute of title over this road (and thus no case or controversy that affords this Court subject matter jurisdiction over Kane County's claims). Nothing has changed since then to alter that conclusion. And because there is no title dispute, the Court does not have jurisdiction to confirm a disclaimer of title by the United States. As such, this matter must be dismissed.

## STATEMENT OF FACTS

### I.    Overview of R.S. 2477

Kane County has brought this action to quiet title to its alleged R.S. 2477 right-of-way for the Hancock Road. Before it was repealed by the Federal Land Policy and Management Act of 1976 ("FLPMA"), R.S. 2477 authorized the construction of public "highways" over

---

[1] Plaintiffs are also seeking to quiet title to two other claimed R.S. 2477 rights-of-way: the K1070 Cave Lakes Road and the K1075 Cave Lakes Road. *See* Compl. ¶ 9. While the jurisdictional defects in this case likely infect all three roads, SUWA's interest is focused on the Hancock Road and, as such, the two Cave Lakes Roads will not be addressed further in this Motion.

unreserved federal public lands.[2] FLPMA preserved established rights-of-way by specifying that any "valid" R.S. 2477 rights-of-way "existing on the date of enactment [October 21, 1976] would continue in effect."[3] "Valid" R.S. 2477 rights-of-way automatically vest without the need for official action or documentation of their establishment.[4] That is, the grantee needed only to act in a manner "sufficient to manifest an intent to accept the congressional offer."[5] The grantee, however, must quiet title to the alleged right-of-way before becoming a recognized right-of-way holder.[6]

The QTA provides a limited waiver of the United States' sovereign immunity and serves as the sole means for which title to a claimed R.S. 2477 right-of-way may be quieted.[7] However, the plaintiff must establish, among other things, that title to the property is "disputed" in order for the Court to have jurisdiction over the claim.[8] Generally speaking, in order for title to be quieted in favor of the claimant, the claimant must demonstrate that prior to October 21, 1976, (1) the road was a public highway, (2) that traversed unreserved federal land, and (3) was in use

---

[2] *S. Utah Wilderness All. v. Bureau of Land Mgmt.* ("*SUWA v. BLM*"), 425 F.3d 735, 740 (10th Cir. 2005) ("In 1866, Congress passed an open-ended grant of 'the right of way for the construction of highways over public lands, not reserved for public uses.' . . . This statute, commonly called 'R.S. 2477,' remained in effect for 110 years." (internal citations omitted)).
[3] *Id.* at 741 (citing Pub. L. No. 94-579 § 701(a), 90 Stat. 2743, 2786 (1976)).
[4] *Id.* at 754.
[5] *Id.*
[6] *See Wilderness Soc'y v. Kane Cnty.*, 581 F.3d 1198, 1220-21 (10th Cir. 2009) (citing *SUWA v. BLM*, 425 F.3d at 757 *SUWA v. BLM*, 425 F.3d at 769) *rev'd on other grounds en banc*, *Wilderness Soc'y v. Kane Cnty.*, 632 F.3d 1162 (10th Cir. 2011).
[7] *See* 28 U.S.C. § 2409a(a).
[8] *Kane Cnty. v. United States* ("*Kane (1)*"), 772 F.3d 1205, 1210, 1211 (10th Cir. 2014), *overruled in part on other grounds by Wilkins v. United States*, 598 U.S. 152 (2023) (for a court to have jurisdiction over a QTA claim, the plaintiff must establish that: (1) the United States "claims an interest" in the property at issue; and (2) title to the property is "disputed.") (citation omitted).

by the public for ten continuous years.[9] If the court determines these elements are met and

adjudicates title in favor of the claimant, the claimant holds perfected title to the R.S. 2477 right-

of-way.

## II.    Prior Litigation Over the Hancock Road

Kane County first attempted to quiet title over the Hancock Road (along with fourteen

other roads) in 2008.[10] After a trial on the merits, the district court issued two contemporaneous

decisions. First the court determined that it had subject matter jurisdiction over the case (*i.e.*, the

United States claimed an interest in and disputed title to each of the fifteen roads).[11] Second, the

court quieted title in favor of Kane County for twelve of the fifteen roads, including the Hancock

Road.[12] Both decisions were appealed to the Tenth Circuit in part on the basis that the United

States did not dispute title for six roads, including the Hancock Road.[13]

In a 2014 decision ("*Kane (1)*"), the Tenth Circuit addressed, for the first time, what is

required to satisfy the QTA's "disputed title" requirement and ultimately held that "a plaintiff

must show that the United States has either expressly disputed title or taken action that implicitly

disputes it."[14] Applying that standard to the Hancock Road, the Tenth Circuit held there was

insufficient evidence to conclude that a dispute of title existed and, thus, the district court lacked

subject matter jurisdiction over the Hancock Road.[15] In particular, the Circuit disagreed with the

---

[9] *SUWA v. BLM*, 425 F.3d at 740, 771.

[10] *See generally Kane Cnty. Utah (1) v. United States*, Case No. 2:08-cv-00315-CW (D. Utah).

[11] *See generally Kane Cnty. v. United States*, 934 F. Supp. 2d 1344 (D. Utah 2013).

[12] *See Kane Cnty. v. United States*, 2013 U.S. Dist. LEXIS 40118, *184 (D. Utah March 20, 2013).

[13] *Kane (1)*, 772 F.3d at 1210.

[14] *Id.* at 1211, 1212.

[15] *Id.* at 1213.

district court's reliance on mapping ambiguities in the Kanab Resource Management Plan to conclude that title was disputed, especially when the plan explicitly stated it did not determine the validity of claimed R.S. 2477 rights-of-way and any valid existing rights are unaffected by the plan.[16]

## III.    Plaintiffs' Attempt to Revisit *Kane (1)*'s Holding

Plaintiffs now assert that, in the eleven years since the Tenth Circuit's *Kane (1)* decision, new circumstances and judicial decisions have created a title dispute.[17] For the reasons explained below, none of these alleged events trigger a title dispute.

### A.    Subsequent events

Plaintiffs allege the following events now establish disputed title:

- In 2018, a witness for the United States testified in a 30(b)(6) deposition that the United States does not consider Plaintiffs as holders of any R.S. 2477 right-of-way unless and until established by judicial adjudication or administrative determination;[18] and

- The United States entered into an allegedly "one-sided" settlement agreement that "requires the BLM to conduct new travel planning, including for the [Hancock] Road."[19] Because "BLM retains discretion 'to open, close, modify, or add new routes,' to its travel management plans and despite language stating that any such travel management plan is "subject to valid existing rights," BLM, according to Plaintiffs, is "setting forth parameters governing Kane County's transportation system;"[20]

---

[16] *Id.*
[17] *See* Compl. ¶¶ 16-18, 53, 56-58, 61-68, 70-72.
[18] *Id.* ¶ 57.
[19] *Id.* ¶ 63.
[20] *Id.* ¶¶ 64-66.

### B.    The *Holders* Decision

Plaintiffs additionally rely on a recent district court decision issued in the twenty-two jointly managed R.S. 2477 cases that Plaintiffs contend changes the dispute-of-title analysis.[21]

The twenty-two roads cases are managed under a Bellwether process in which fifteen roads were initially selected to be adjudicated as test cases.[22] The United States filed several motions to dismiss on the basis that it did not dispute title to eight of the fifteen Bellwether roads.[23] The court referred to these eight roads as the "Jurisdictional Roads."[24]

On August 9, 2024, the court issued an order (the "*Holders Decision*") denying the United States' motions to dismiss and concluding that the plaintiff counties are vested "holders" of a claimed R.S. 2477 right-of-way even if title to the right-of-way has not been adjudicated.[25] In reaching this conclusion, the court explained that, in its view, adjudicating title under the QTA is necessary only when there is a dispute "about whether a claimed title actually passed prior to October 21, 1976."[26] The court continued that adjudicating title in favor of the vested right-of-way holder "perfects" the title—that is, it quiets the existing, vested title against other adverse claimants, including the United States.[27]

---

[21] *Kane Cnty. (2) v. United States*, 2:10-cv-01073-CW (D. Utah) (lead case).

[22] *Kane Cnty. v. United States* ("*Holders Decision*"), 2024 U.S. Dist. LEXIS 142312, *9 (D. Utah Aug. 9, 2024).

[23] *Id.* at *15.

[24] *Id.* at *16.

[25] *Id.* at *49-50. The *Holders Decision* specifically addressed subject matter jurisdiction and whether a dispute of title exists for eight of the fifteen Bellwether roads ("Jurisdictional Roads"). *Id.* at *15-20.

[26] *Id.* at *34.

[27] *Id.* at *35.

With respect to the eight Jurisdictional Roads at issue in the *Holders Decision*, the court went on to find that title is disputed for each of those roads and, thus, the court has subject matter jurisdiction to adjudicate title.[28] In particular, the court determined that a series of BLM actions have given rise to a disputed title, citing three primary reasons. *First*, the court concluded, contrary to *Kane (1)*, that by issuing the applicable resource management plans, "BLM altered the status of existing rights by moving all roads under its jurisdiction and authority and by controlling whether a road will be opened or closed based on criteria it set."[29]

*Second*, "BLM entered into a settlement agreement with SUWA and other environmental groups" wherein "BLM agreed to issue new travel management plans for various areas, including Kane County."[30] And since "BLM retains discretion to open, close, modify, or add new routes, to its travel management plans" and "does not treat any road as being an R.S. 2477 right-of-way absent judicial adjudication," the settlement agreement is "another action where the United States is setting forth parameters governing Kane County's transportation system" contrary to the rights of an R.S. 2477 right-of-way holder.[31]

Finally, the court stated that

[b]ecause the United States treats Plaintiffs as non-holders for all roads that have not had title perfected under the QTA, it has taken the position that it has no duty to consult with Plaintiffs about proposed road improvements. Instead, if Plaintiffs

---

[28] *Id.* at *80.

[29] *Id.* at *84; *contra Kane (1)*, 772 F.3d at 1212-13 (holding that including the litigated roads in the relevant resource management plan (even if the effect of the plan on the roads is unclear) does not constitute a dispute of title, in part because the 2008 Kanab Resource Management Plan did not adjudicate or affect valid, existing rights-of-way).

[30] *Holders Decision*, 2024 U.S. Dist. LEXIS 142312, *85-86.

[31] *Id.* at *86-87.

want to improve a road, according to the United States, Plaintiffs must seek a Title V permit.[32]

According to the *Holders Decision*, because rights under a Title V permit are "significantly less" than those afforded to an R.S. 2477 right-of-way holder, requiring Kane County to obtain a Title V permit to improve R.S. 2477 roads would "eviscerat[e]" its rights as an R.S. 2477 right-of-way holder.[33]

As explained below, none of these subsequent events are sufficient to establish a dispute as to title and Plaintiffs' case must be dismissed.

## STANDARD OF REVIEW

Motions to dismiss for a lack of subject matter jurisdiction are brought in accordance with Federal Rule of Civil Procedure 12(b)(1). When the court's jurisdiction is challenged under Rule 12(b)(1), the court must presume a lack of subject matter jurisdiction until the plaintiff proves otherwise.[34] To overcome the presumption against jurisdiction, the plaintiff must produce evidence "sufficient to establish the court's subject matter jurisdiction by a preponderance of the evidence."[35]

## ARGUMENT

This Court lacks subject matter jurisdiction over Plaintiffs' claims. The *status quo* has not changed since the Tenth Circuit's *Kane (1)* decision and, as such, there is no dispute of title over

---

[32] *Id.* at *87.
[33] *Id.* at *87, *90-91; *contra Kane (1)*, 772 F.3d at 1214 (holding that the issuance of Title V permits do not "explicitly or implicitly" dispute Kane County's title to the roads at issue in part because the Title V permits "state they do not affect R.S. 2477 rights-of-way" and indeed "explicitly state they are 'superseded' by any R.S. 2477 rights-of-way.") (emphasis in original).
[34] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).
[35] *Southway v. Cent. Bank of Nigeria*, 328 F.3d 1267, 1274 (10th Cir. 2003).

the Hancock Road. Furthermore, the Court does not have jurisdiction to confirm any disclaimer of title for the Hancock Road (in full or in part) because there is no title dispute.

## I. The Court Does Not Have Subject Matter Jurisdiction Because There is No Dispute of Title Over the Hancock Road.

The QTA is the "exclusive means by which adverse claimants [can] challenge the United States' title to real property."[36] Under the QTA, plaintiffs may sue the United States "to adjudicate a <u>disputed title</u> to real property in which the United States claims an interest."[37] Based on this language, the Tenth Circuit has "imposed two requirements for federal jurisdiction: (1) the United States must 'claim[] an interest' in the property, and (2) the property's title must be 'disputed.'"[38] Both elements must be met at the time the complaint is filed.[39]  But here, the latter requirement is not met.[40]

Although "a plaintiff need not show the United States took direct action to close or deny access to a road," a plaintiff must at least show that the United States made "indirect action[s] or assertions that actually conflict with a plaintiff's title."[41] A plaintiff may also show that "the United States has previously disputed a plaintiff's title even if it does not do so presently."[42]

---

[36] *Block v. N.D. ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 286 (1983).

[37] 28 U.S.C. § 2409a(a) (emphasis added).

[38] *High Lonesome Ranch, LLC v. Bd. of Cnty. Comm'rs for the Cnty. of Garfield*, 61 F.4th 1225, 1238 (10th Cir. 2023) (citing *Kane (1)*, 772 F.3d at 1210-11).

[39] *Leisnoi, Inc. v. United States*, 170 F.3d 1188, 1192-93 (9th Cir. 1999); *see also Grupo Dataflux v. Atlas Global Group L.P.*, 541 U.S. 567, 570 (2004) (explaining that subject matter jurisdiction is determined based on the facts that existed at the time the complaint was filed.").

[40] The Hancock Road primarily traverses federal public land in Kane County, Utah. Thus, the first element of the QTA jurisdictional test is satisfied because, as the Tenth Circuit has observed, the United States "obviously 'claims an interest' in its own land." *Id.*

[41] *High Lonesome Ranch*, 61 F.4th at 1238 (quoting *Kane (1)*, 772 F.3d at 1212) (internal quotation marks omitted).

[42] *Id.*

However, "actions of the United States that merely produce some ambiguity regarding a plaintiff's title" do not indicate that title is disputed.[43]

Even taking Plaintiffs' allegations in their Complaint as true, Plaintiffs have not established that a dispute of title now exists (or ever existed) over the Hancock Road.

### A.    The Tenth Circuit previously determined there was no title dispute over the Hancock Road.

Under the basic principle of *stare decisis*, a legal conclusion from the Tenth Circuit "is the law of th[e] Circuit" "unless or until the holding…is overruled by the Supreme Court or by the en banc court."[44] This includes determinations of the district court's subject matter jurisdiction (or lack thereof).[45]

As explained *supra*, Plaintiffs previously attempted to quiet title to the Hancock Road (and others) in a 2008 lawsuit. Despite initially prevailing in district court, on appeal the Tenth Circuit reversed with respect to the Hancock Road, holding that because there was no disputed title, the district court lacked subject matter jurisdiction.[46] The district court had found that title was in dispute because maps included in the BLM's Kanab Resource Management Plan initially omitted the Hancock Road and this "had the practical effect of closing the roads."[47] However, the Tenth Circuit held that the district court's reliance on this jurisdictional fact was insufficient to confer subject matter jurisdiction for several reasons:[48]

---

[43] *Id.*
[44] *Thompson v. Weyerhaeuser Co.*, 582 F.3d 1125, 1130 (10th Cir. 2009) (cleaned up).
[45] *See McPhail v. Deere & Co.*, 529 F.3d 947, 954 (10th Cir. 2008) ("[j]urisdiction itself is a legal conclusion, a <u>consequence</u> of facts rather than a provable 'fact'." (emphasis in original) (quoting *Meridian Security Ins. Co. v. Sadowski*, 441 F.3d 536, 540-43 (7th Cir. 2006)).
[46] *Kane (1)*, 772 F.3d at 1213.
[47] *Id.* at 1212-13.
[48] The Tenth Circuit reviewed the district court's title determinations *de novo*. *Id.* at 1210.

> The Plan <u>explicitly</u> declared it did not adjudicate or affect rights-of-way. Further, though the Plan marked certain roads as closed, Hancock and Sand Dunes were not marked as closed; they simply were not marked at all. Though a provision of the Plan suggested travel was limited to designated routes, the effect of this provision is unclear, as the United States took no action to limit travel to such routes.[49]

Based on the entirety of the evidence, the *Kane (1)* court concluded that while the Plan's maps were ambiguous regarding the legal status of the Hancock Road, this "ambiguity was insufficient to constitute a 'disputed title'" under the QTA.[50]

The same is true in this case. The Kanab Resource Management Plan remains in effect[51] and thus the Tenth Circuit's reasoning still applies.[52] In the absence of additional jurisdictional facts demonstrating a title dispute, of which there are none, this Court is obligated to follow *Kane (1)*.

**B.    Subsequent events have not created a title dispute.**

Plaintiffs allege that in the intervening eleven years since the *Kane (1)* decision, a dispute as to title has arisen over the Hancock Road for two reasons: (1) a witness for the United States previously testified in a separate matter that the United States does not view Plaintiffs as R.S. 2477 right-of-way holders "unless and until established by 'judicial adjudication or through an administrative determination'"; and (2) the United States entered into a "one-sided settlement agreement" that obligated BLM to issue new travel management plans.[53]

Both arguments fail.

---

[49] *Id.* 1213 (emphasis in original).

[50] *Id.*

[51] *See Holders Decision*, 2024 U.S. Dist. LEXIS 142312, *85 (stating that the Kanab Resource Management Plan still governs BLM's transportation system)

[52] *Contra id.* at *84-85 (holding, contrary to the Tenth Circuit's *Kane (1)* decision, that BLM's regulation of roads according to a resource management plan creates a title dispute).

[53] Compl. ¶¶ 57, 61-63, 68-71.

       *i.*     *The United States' 2018 testimony on whether it views Plaintiffs as "holders" simply reiterates Tenth Circuit caselaw.*

Plaintiffs first allege that a title dispute has arisen because, in 2018, the United States' Rule 30(b)(6) witness in the Bellwether case testified that the United States does not view Plaintiffs as R.S. 2477 right-of-way holders until title is adjudicated by a court or BLM has administratively determined the validity of an R.S. 2477 claim for its own purposes.[54]

At the outset, this is not a statement about whether title is disputed but instead a legal conclusion.

Moreover, this legal conclusion by the United States was simply reiterating what the Tenth Circuit has held for years. As the court explained in *SUWA v. BLM*, there is a presumption of title in favor of the federal government and "the burden of proof lies on those parties seeking to enforce rights-of-way against the federal government."[55] More specifically, to prove they hold a vested R.S. 2477 right-of-way, Plaintiffs have "the burden of establishing public use for the required period of time [ten years], and must also demonstrate several other factors including that the claimed right-of-way is across unreserved lands."[56] And until Plaintiffs carry their burden and prove in court that the claimed road was a public highway across unreserved federal land in use for ten continuous years, thereby demonstrating they hold a valid right-of-way, they are "not entitled to win title or exercise unilateral management authority."[57]

---

[54] *Id.* ¶ 53 (citing *Holders Decision*, 2024 U.S. Dist. LEXIS 142312, *25-26). The parties in the Bellwether case are the same as in the above-captioned matter.

[55] 425 F.3d at 768.

[56] *Id.*; *see also San Juan Cnty. v. United States*, 754 F.3d 787, 797 (10th Cir. 2014) ("As right-of-way claimants, the burden of proof of establishing an R.S. 2477 right-of-way lies with the state and county.").

[57] *Wilderness Soc'y*, 581 F.3d at 1220; *contra Holders Decision*, 2024 U.S. Dist. LEXIS 142312, *42-43 (stating, without citation, that "the United States cannot require adjudication by a court

Put simply, unless and until title to a claimed R.S. 2477 right-of-way is adjudicated in Plaintiffs' favor, BLM is not required to treat Plaintiffs as holders of a valid, vested right-of-way.[58] BLM's 2018 witness testimony restating Tenth Circuit precedent does not somehow create a dispute of title.

   ii. *The 2017 travel management planning settlement agreement has no bearing on whether title of the Hancock Road is disputed.*

Plaintiffs next allege that the 2017 travel management planning settlement agreement between the United States and "environmental groups"[59] has created a title dispute.[60] Plaintiffs rely exclusively on the *Holders Decision*, which found that, "[b]ecause the United States does not treat any road as being an R.S. 2477 right-of-way absent judicial adjudication," and the terms of the 2017 settlement agreement give the United States "unilateral decision making" authority "to open, close, modify, or add new routes" to the travel management plans, the United States has implicitly disputed Plaintiffs' title to roads included in such plans.[61] But Plaintiffs do not explain how title to the Hancock Road, specifically, is in dispute because of the settlement agreement. Indeed, the litigation history and specific circumstances of the Hancock Road undermine Plaintiffs' claims.

---

before one is treated as an R.S. 2477 holder…and the United States lacks authority to disregard one's status as a holder based on invented parameters set by the [Department of the Interior].").

[58] *See SUWA v. BLM*, 425 F.3d at 757 (explaining that federal courts, and not BLM, have the sole authority to make legally-binding determinations about whether a claimant holds a valid, vested R.S. 2477 right-of-way).

[59] In addition to environmental groups, several motorized recreation groups were also parties to the settlement agreement. Settlement Agreement at 1, *S. Utah Wilderness All. v. U.S. Dep't of the Interior*, 2:12-cv-00257-DAK (May 16, 2017) (ECF No. 540 ("2017 Settlement Agreement").

[60] Compl. ¶¶ 62-69.

[61] *Id.* ¶¶ 63-67 (quoting *Holders Decision*, 2024 U.S. Dist. LEXIS 142312, *86-87).

*First*, the Tenth Circuit has already ruled that BLM's treatment of roads in a management plan does not create a dispute as to title. Just as with the Kanab Resource Management Plan at issue in *Kane (1)*, the travel management plans that BLM will issue pursuant to the settlement agreement are subject to valid existing rights and the route designations made in those plans "do not signify a recognition or rejection of R.S. 2477 assertions."[62] Based on this same fact pattern, the Tenth Circuit determined there was no title dispute over the Hancock Road.[63]

*Second*, despite being signed in 2017, the settlement agreement has not yet resulted in a travel management plan for the Trail Canyon area, which encompasses the Hancock Road.[64] Therefore, the United States has not exercised any sort of "unilateral decision making" authority that hinders whatever rights Plaintiffs may hold as an alleged R.S. 2477 vested rights holder such that Plaintiffs must "defend their interest" in the Hancock Road during the travel planning process.[65]

\*\*\*

---

[62] 2017 Settlement Agreement ¶17.h.

[63] *Kane (1)*, 772 F.3d at 1213.

[64] Currently, BLM does not have an expected completion date for the Trail Canyon Travel Management Plan. *See* Seventh Decl. of Matthew Preston, *S. Utah Wilderness All. v. U.S. Dep't of the Interior*, 2:12-cv-00257-DAK (D. Utah) (ECF No. 603-1) SUWA respectfully requests the Court take judicial notice of Mr. Preston's declaration because the information contained therein is from a "source[] whose accuracy cannot reasonably be questioned" and directly pertains to the matters at issue in this case. Fed. R. Evid. 201(b)(2); *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) ("[W]e may exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand."); *see also St. Louis Baptist Temple v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (same).

[65] Compl. ¶¶ 62, 68. SUWA does not concede that Plaintiffs have established they hold a vested right-of-way for the Hancock Road.

Plaintiffs have not demonstrated there is now a title dispute over the Hancock Road. The Tenth Circuit's reasoning for holding there was no title dispute over the road in 2014 still applies and is binding in this case. Furthermore, the subsequent events Plaintiffs rely on to allege a dispute of title are immaterial and have not altered the *status quo*. Based on the jurisdictional facts before this Court, Plaintiffs have not overcome the presumption against subject matter jurisdiction and this case must be dismissed.

## II.   The Court Cannot Approve Any Disclaimer of Title Without Subject Matter Jurisdiction.

The United States has indicated that it seeks to resolve this case via a "disclaimer of interest," rather than actually litigating Plaintiffs' claims.[66] As explained below, that does not absolve Plaintiffs of the requirement to establish subject matter jurisdiction.

In a quiet title action, the United States has the option to resolve the matter by disclaiming all interest adverse to the plaintiff (*e.g.*, right-of-way title) prior to the "commencement of trial."[67] Any such disclaimer must be "confirmed by order of the court," upon which "the jurisdiction of the district court shall cease."[68]

But Plaintiffs still need to establish subject matter jurisdiction before any interest can be disclaimed. Indeed, by its plain language, the QTA allows a court-confirmed disclaimer to resolve a quiet title action only if the court has subject matter jurisdiction over the action in the

---

[66] *See* ECF No. 17 at 1 ("[T]he United States is exploring whether Plaintiffs' claim to the Hancock Road…can be resolved via a federal disclaimer of interest under 28 U.S.C. § 2409a(e)"). This point was reiterated by the United States' counsel at the January 16, 2026 hearing.

[67] 28 U.S.C. § 2409a(e).

[68] *Id.*

first place.[69] Put simply, "if the [QTA] does not apply, the district court does not have jurisdiction" to approve a disclaimer.[70]

Here, Federal Defendants have stated their preferred resolution of this case, at least with respect to the Hancock Road, is through a disclaimer of title under the QTA.[71] But as explained above, the Court does not have subject matter jurisdiction over these claims because there is no disputed title over the Hancock Road. And because there is no subject matter jurisdiction, the Court has no authority to accept or confirm a disclaimer of title in full or in part under 28 U.S.C. § 2409a(e).[72]

## **CONCLUSION**

For the reasons stated above, SUWA respectfully requests the Court dismiss Plaintiffs' claims in the above-captioned matter for a lack of subject matter jurisdiction.

Respectfully submitted January 26, 2026.

/s/ Hanna Larsen
Stephen Bloch
Hanna Larsen
SOUTHERN UTAH WILDERNESS ALLIANCE

Mitchell Longson
MANNING CURTIS BRADSHAW
& BEDNAR PLLC

---

[69] *Leisnoi*, 170 F.3d at 1192 ("Subsection (e)...does not purport to confer jurisdiction; it merely provides that jurisdiction ceases when the United States files a disclaimer of title."); *Sawtooth Mt. Ranch LLC v. United States*, 2020 U.S. Dist. LEXIS 7071, *19-20 (D. Idaho 2020) ("Section 2409a(e) unequivocally presumes the Court has jurisdiction over the matter in the first instance.").

[70] *Leisnoi*, 170 F.3d at 1191.

[71] ECF No. 17 at 1.

[72] *See, e.g.*, *Sawtooth Mt. Ranch*, 2020 U.S. Dist. LEXIS 7071, *19-20 (concluding section 2409a(e) was "inapplicable" because the plaintiffs "have not set forth plausible facts establishing a conflict in title" and thus, the court lacked jurisdiction to adjudicate the case).

Trevor Lee
HOGGAN LEE HUTCHINSON

*Attorneys for Proposed Defendant-Intervenor*
*Southern Utah Wilderness Alliance*